UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN A. CHALFANT,<br>Plaintiff | ) | CIVIL ACTION NO. 4:20-CV-1719 |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL<br>SECURITY,<br>Defendant | ) | |

<u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION

Plaintiff John A. Chalfant, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision must be VACATED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On July 13, 2017, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 182-88; Doc. 16-5, pp. 2-8).  In these applications, Plaintiff alleged he became disabled as of December 27, 2016, when he was fifty-three years old, due to the following conditions: nerve death in his right arm and shoulder, permanently damaged ligaments in his right shoulder, and brachial plexitis. (Admin. Tr. 74-75; Doc. 16-3, pp. 2-3). Plaintiff alleges that the combination of these conditions affects his ability to lift his right arm, hold items in his right hand, sit for long periods of time, and walk long distances. (Admin. Tr. 54-64; Doc. 16-2, pp. 55-65). Plaintiff completed either the tenth or eleventh grade. *Compare* (Admin. Tr. 45; Doc. 16-2, p. 47) (told ALJ at hearing that he completed the tenth grade) *with* (Admin. Tr. 206, Doc. 16-6, p. 7) (wrote in his application he completed the eleventh grade). Before the onset of his impairments, Plaintiff worked as a kitchen helper/dishwasher, a machine packager, a juice blender, and a sprayer, insecticide. (Admin. Tr. 29, Doc. 16-2, p. 30).

On September 11, 2017, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 108-113; Doc. 16-4, pp. 2-7). On September 21, 2017, Plaintiff requested reconsideration of his applications, (Admin. Tr. 114-116; Doc. 16-4, pp. 8-10), but the Commissioner affirmed her decision on October

25, 2017. (Admin. Tr. 117-21; Doc. 16-4, pp. 11-15). On December 28, 2017, Plaintiff requested an administrative hearing. (Admin. Tr. 123; Doc. 16-4, p. 17).

On July 12, 2019, Plaintiff appeared and testified during a hearing before Administrative Law Judge Gwendolyn Hoover (the "ALJ"). (Admin. Tr. 37; Doc. 16-2, p. 38). Plaintiff was not assisted by counsel at the hearing. (*Id.*). On October 28, 2019, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 16; Doc. 16-2, p. 17). On November 26, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 178-80; Doc. 16-4, pp. 72-74). Plaintiff did not submit relevant new evidence that was not available to the ALJ when the ALJ's decision was issued. (Admin. Tr. 4; Doc. 16-2, p. 5).

On July 28, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 16-2, p. 2).

On September 22, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. (*Id.*). As relief, Plaintiff requests that the Court enter "judgment for such relief may be proper." (*Id.*).

On March 26, 2021, the Commissioner filed an Answer. (Doc. 15). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not

entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (*Id.*). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 16).

Plaintiff's Brief (Doc. 19) and the Commissioner's Brief (Doc. 10) have been filed. Plaintiff did not file a reply brief. This matter is now ripe for decision.

III. STANDARDS OF REVIEW

Before discussing the merits of the case, it is helpful to restate the legal principles governing Social Security appeals.

A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing

evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP
      SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

---

[1] Throughout this Memorandum Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on October 28, 2019.

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5);

Page 7 of 21

42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

Having reviewed the applicable law, I now turn to the merits of this case.

IV.    DISCUSSION

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In her October 2018 decision, the ALJ evaluated Plaintiff's applications for benefits. Fist, she found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2021. (Admin. Tr. 22; Doc. 16-2, p. 23). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since December 27, 2016. (*Id.*). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative joint disease of the right shoulder and brachial plexopathy. (Admin. Tr. 22; Doc. 16-2, p. 23). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 25; Doc. 16-2, p. 26).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in medium work as defined in 20 C.F.R. § 404.1567(c) and 20 C.F.R. § 416.967(c) except Plaintiff is limited to only "occasional reaching overhead with his right upper extremity." (Admin. Tr. 25; Doc. 16-2, p. 26).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 29; Doc. 16-2, p. 30). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (*Id.*). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: laundry laborer (DOT Code # 361.687-018), machine feeder (DOT Code # 699.686-010), and dining room attendant or table busser (DOT Code # 311.677-018). (Admin. Tr. 30; Doc. 16-2, p. 31).

Plaintiff alleges that the aforementioned opinion is marred by the following errors:

(1)    The ALJ failed "probe into, inquire of, and explore all the relevant facts" regarding Plaintiff's mental impairments, resulting in an RFC finding that does not accurately reflect all his impairments.

(2)    Similarly, the ALJ erred by failing to fully account for all of the Plaintiff's shoulder limitations, some of which he found to be "severe impairments."

(Doc. 19, p. 1). To decide this case, I only need to analyze the first alleged error.

B.   WHETHER THE ALJ ERRED IN FAILING TO FULLY DEVELOP THE RECORD IN REGARD TO PLAINTIFF'S MENTAL HEALTH CONDITIONS

Plaintiff alleges that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to develop the record with respect to Plaintiff's mental health impairments. (Doc. 19, pp. 8-9).  Plaintiff argues that the ALJ should have ordered a consultative exam because Plaintiff's mental health records are extremely limited but show serious symptoms. (*Id.*). Because the ALJ failed to develop the record, it opened the opportunity for the ALJ to conduct a lay analysis of the record when she concluded that Plaintiff's depressive episodes were situational, rather than ongoing. (*Id.*). Further, Plaintiff argues that this error led the ALJ to discount Dr. Hoyle's medical opinion on Plaintiff's mental health impairments. (*Id.*). While the Commissioner argues that the ALJ fulfilled her duty, and the ALJ properly exercised her discretion in not purchasing a consultative examination, I disagree. (Doc. 22, pp. 12-14). Before I discuss my analysis, I will review the standards for assessing a "duty to develop" claim and discuss Plaintiff's mental health history.

1.   The ALJ's Duty to Develop the Record

Social Security hearings are non-adversarial and as such, the ALJ has a duty to investigate all matters at issue and seek all relevant facts. *Schmidt v. Colvin*, No. 13-539, 2013 U.S. Dist. LEXIS 183434, at *31-34 (W.D. Pa.  Dec. 23, 2013). This

duty is heighted when a claimant is pro se; for these claimants, "the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (internal quotations omitted). *See also Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (holding that ALJs must assume a more active role when the claimant is unrepresented). If the ALJ fails to develop the record towards a pro se claimant, a federal court can remand the case back to the Commissioner if there is "a showing of clear prejudice or unfairness at the administrative hearing." *Id.*

In keeping with the Commissioner's duty to develop the record, the Commissioner may ask a claimant to undergo a consultative evaluation. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). The Commissioner's regulations state that:

> We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or

(4) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

20 C.F.R. § 404.1519a(b); 20 C.F.R. § 416.919a(b).

"The decision to order a consultative examination is within the sound discretion of the ALJ unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Miller v. Berryhill*, No. 17-cv-1452, 2019 WL 3776662, at *18 (M.D. Pa. Aug. 12, 2019) (citing *Thompson v. Halter*, 45 F. App'x. 146, 149 (3d Cir. 2002)). "[W]here the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." *Brown v. Saul*, No. 18-cv-01619, 2020 WL 6731732, at *10 (M.D. Pa. Oct. 23, 2020) (report and recommendation adopted by 2020 WL 6729164 (M.D. Pa. Nov. 16, 2020)) (citing *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997)).

2.     Plaintiff's Mental Health History

Plaintiff has had serious episodes of depressive symptoms. On September 13, 2017, Plaintiff arrived at the emergency department of Southeastern Ohio Regional Medical Center after he attempted to commit suicide by overdosing on methocarbamol and lidocaine patches. (Admin. Tr. 297; Doc. 16-7, pp. 47). At the emergency department, he told providers "I just want to die. I don't deserve to live." (*Id.*). While at the hospital, Plaintiff underwent a psychiatric evaluation, where Dr.

Page 13 of 21

James Johnson noted that Plaintiff had a depressed mood, blunted affect, mildly impaired concentration, mildly impaired memory, limited judgement, and limited insight. (Admin. Tr. 370-72; Doc. 16-8, pp. 20-22). Dr. Johnson diagnosed Plaintiff with depressive disorder. (*Id.*).

Plaintiff recovered and was discharged after five days on September 18, 2017. (Admin. Tr. 345; Doc. 16-7, pp. 95). In the weeks following his discharge, he visited a mental health provider twice. (Admin. Tr. 354; Doc. 16-8, p. 4). On his first visit on October 2, 2017, he told the provider that he attempted to kill himself because he could not find work in the past year, his mother was suffering from Alzheimer's disease and recently had to place her in a residential care facility, he was criminally indicted a day before his suicide attempt, he was denied disability payments around the same time, and his wife kicked him out of the house in early September. (Admin. Tr. 359; Doc. 16-8, p. 9). His mental state exam was normal, and he was subsequently diagnosed with adjustment disorder with depression, and with opioid use disorder. (Admin. Tr. 360; Doc. 16-8, p. 10). He visited the clinic again on October 10, 2017. (Admin. 352-53; Doc. 16-8, pp. 2-3). This was his last contact with a mental health provider in 2017.

Plaintiff's medical records jump to late 2018.[2] On an October 30, 2018 visit with Amelia Poplawski, PA-C, Plaintiff scored a six on PHQ-9 depression screening test,[3] indicating mild depression. (Admin. Tr. 521-23; Doc. 16-11, pp. 25-27). Two months later, on a December 28, 2018 visit with Ms. Poplawski, Plaintiff scored a twelve on the PHQ-9, indicating moderate depression. (Admin. Tr. 524-26; Doc. 16-11, pp. 28-31). However, Plaintiff declined behavioral health treatment. (*Id.*). On February 8, 2019, following an overdose of heroin, Plaintiff was admitted to the emergency department of York Hospital, where a physician noted that he was "very depressed," and wrote that that he would ask Plaintiff to consider taking Cymbalta, an anti-depressant. (Admin. Tr. 417; Doc. 16-9, p. 7). On March 4, 2019, Plaintiff visited Dr. Luis Garcia, who noted that Plaintiff had a PHQ-9 score of seven, indicating again, mild depression. (Admin. Tr. 502-03; Doc. 16-11, pp. 6-7). On May 22, 2019, at a neurology visit with Dr. Adrian Chan, Plaintiff had a normal review

---

[2] All records from 2018 to 2019 were not originally available to the ALJ at the hearing but were submitted to the ALJ when she wrote her opinion. The one exception to this is Plaintiff's March 4, 2019 visit with Dr. Luis Garcia. The ALJ originally only had a partial copy of the records from that visit.

[3] The PHQ-9 is a depression screening test that is scored on a scale of 0 to 27. Kurt Kroenke et al., *The PHQ-9: validity of a brief depression severity measure*, 16 J. GEN. INTERNAL MED. 606 (2001). A score of 0-4 is classified as no depression; 5-9, mild depression; 10-14, moderate depression; 15-19, moderately severe depression; and 20-27, severe depression. *Id.*

of systems, with no note of a depressed mood. (Admin. Tr. 545-547; Doc. 16-11, pp. 49-51).

When Plaintiff applied for disability, Dr. Tonnie Hoyle, a state agency consultant reviewed Plaintiff's mental health history. She stated that she did not have enough information to determine whether Plaintiff's condition could satisfy the paragraph b or c criteria for mental health disorders. (Admin. Tr. 93; Doc. 16-3, p. 21). Despite this, Dr. Hoyle found Plaintiff's depression to be a severe impairment. (Admin. Tr. 92; Doc. 16-3, p. 20). This is the only medical opinion on the record that discusses Plaintiff's mental health impairments.

### 3.   Analysis

Given Plaintiff's clear history of depressive symptoms, the ALJ failed in her duty to develop the record when she did not order a consultative examination. A consultative examination is warranted in this case, given the gaps and inconsistencies in Plaintiff's record, for the following three reasons.

First, the fact that a state agency expert opined "that there was insufficient data to determine [Plaintiff's] work-related limitations . . . was unusual and strongly suggested a need to further develop the administrative record prior to rendering a

decision in this case."[4] *Neifert v. Saul*, No. 20-cv-453, 2020 WL 6585897, at \*16-17 (M.D. Pa. Nov. 10, 2020). And to the ALJ's credit, she sought missing records when identified at the administrative hearing. However, the ALJ then erred in her analysis of Dr. Hoyle's opinion when she found her opinion unpersuasive because Plaintiff's updated medical records showed that Plaintiff's mental impairments are non-severe. This is a questionable conclusion as these "new" medical records are, at best, muddled in terms of Plaintiff's mental health impairments. The updated records are from Plaintiff's two hospitalizations at York Hospital, his three visits with his primary care provider, and his neurology consult with Dr. Adrian Chen. And as described in more detail above, in these new records, a provider described Plaintiff's depressive symptoms at least four different times. For example, at one visit, Plaintiff took a depressive screening test that showed he might have moderate depression. (Admin. Tr. 524-26; Doc. 16-11, pp. 28-31). In another visit, a provider described Plaintiff as very depressed, and encouraged him to start taking antidepressants. (Admin. Tr. 417; Doc. 16-9, p. 7). And while I acknowledge that on some instances a provider did not note depressive symptoms, it is hardly the type of overwhelming

---

[4] I will construe Dr. Hoyle's statement as a medical opinion. *See Neifert*, 2020 WL6585897, at \*16-17 (considering a state agency statement that the record is insufficient to formulate work-related limitations as a medical opinion).

evidence that could provide sufficient evidence for a lay person to discredit a medical opinion.[5]

Second, by failing to develop the record, it opened opportunities for the ALJ to inject her lay opinion into the RFC when she speculated that Plaintiff's depression was situational, thus supporting her conclusion that it is not a limiting impairment. However, there is no medical opinion evidence to support that conclusion. While Plaintiff's therapist attributed Plaintiff's suicide attempt to external stressors, no one has opined on whether Plaintiff's other depressive episodes were also situational. Such a conclusion is based on the ALJ's lay opinion and is not supported by substantial evidence. *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000); *Joos v. Astrue*, No. 09-cv-1693, 2010 WL 4625577, at * 9-10 (W.D. Pa. Nov. 4, 2010) ("the ALJ did not cite any medical opinion that [claimant's] depression was situational . . . [t]his amorphous conclusion based solely on the ALJ's own lay opinion is not substantial evidence . . . ."). A consultative examiner or other medical professional would be better equipped to make such a decision.

---

[5] I acknowledge that the raw interpretation of a PHQ-9 depression screening test likely requires nuisance from a health care provider. However, I cite to Plaintiff's PHQ-9 scores not to establish that Plaintiff suffers from depression. Rather, I cite to the scores to show that it was unreasonable for the ALJ to discount Dr. Hoyle's opinion when she cites to medical records that show mild to moderate PHQ-9 results.

Third and finally, beyond failing to obtain a medical opinion on Plaintiff's mental health impairments, the ALJ did not probe Plaintiff about his mental health at the administrative hearing. Despite the record containing numerous red flags that Plaintiff suffers from a mental health impairment,[6] the ALJ still failed to ask Plaintiff at the hearing about his mental health, except for asking whether he received or "attempted to get any mental health treatment." (Admin. Tr. 57; Doc. 16-2, p. 58). After Plaintiff told the ALJ, "no," the ALJ promptly moved on to a new topic. Thus, by failing to probe deeper into Plaintiff's mental health impairments, especially when Plaintiff did not submit a function report, the ALJ failed to develop the record. *See Albritton v. Comm'r of Soc. Sec.*, No. 20-cv-291, 2021 WL 1176147, at * 17 (E.D.N.Y. Mar. 28, 2021) (when the ALJ failed to obtain a medical opinion on Plaintiff's mental health impairments and failed to ask about these issues at his hearing, the ALJ "thus failed again to appropriately develop the record").

I acknowledge that Plaintiff never claimed to have a mental health impairment in his application. However, the ALJ should have probed deeper because when there is "information to suggest" that Plaintiff had a mental health impairment, the ALJ

---

[6] I presume the ALJ was familiar with the record as she questioned Plaintiff on his impairments without prompting by Plaintiff. (*See* Admin. Tr. 55, Doc. 16-2, p. 56) ("You have some substance use issues."). This is a reasonable assumption especially in a short record like this. Plaintiff has very few medical records, and his suicide attempt and subsequent therapy notes constitute a substantial portion of the record.

should have "developed the evidence regarding the possibility of a medically determinable mental impairment." 20 C.F.R. § 404.1529(b). Additionally, the ALJ has a "duty . . . to, at a minimum, emphasize to the claimant the importance of providing all the relevant evidence." *Schmidt v. Colvin*, No. 13-cv-539, 2013 U.S. Dist. LEXIS 183434, at * 34 (W.D. Pa. Dec. 23, 2013 (report and recommendation adopted by 2014 WL 197910 (W.D. Pa. Jan. 14, 2014)) (quoting *Brittingham v. Weinberger*, 408 F. Supp. 606, 611 (E.D. Pa. 1976)). Further, "where the record reveals evidence of an impairment, precedent in our circuit would suggest that the ALJ should at least confirm the attorney's waiver of consideration of this impairment with the claimant, and . . . inform the claimant of the importance of the information." *Hippensteel v. Soc. Sec. Admin.*, 302 F.Supp.2d 382, 390 (M.D. Pa. 2001).

So, as applied here, the ALJ had a duty to develop the record despite the lack of Plaintiff's complaints of a mental health impairment. Additionally, the ALJ should have asked Plaintiff if he wished to waive any claim of a mental health impairment after explaining the importance of providing all relevant information about his disability.

In summary, a remand is warranted in this case in light of the ALJ's affirmative duty to develop the record, Plaintiff's pro se status, the ambiguities in the record, and the limited medical evidence of Plaintiff's mental health impairments.

V.     CONCLUSION

It will be ordered that Plaintiff's request for an appropriate judgment against

the Commissioner be granted as follows:

(1) The final decision of the Commissioner will be VACATED.

(2) This case should be REMANDED to the Commissioner to conduct a new
administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3) Final judgment will be issued in favor of John Chalfant.

(4) The Clerk of Court is directed to close this case.

Date: March 21, 2022                              BY THE COURT

                                                  _s/William I. Arbuckle_
                                                  William I. Arbuckle
                                                  U.S. Magistrate Judge